Good morning, Your Honors, and I thank you for hearing this appeal this morning. I know you're familiar with the brief, so I'll just very quickly provide an overview of this case. My name is David Balch, and I represent the petitioners in this matter, the Eades and their company. They were trying to do a subdivision in San Benito County, which is— Let me ask you, what is the Tres Pinos Water District? Is it a municipal agency? Is it a private company? What exactly is it? It's a municipal agency subject to the Brown Act, and it's a public water district. And what's its relationship with the Board of Supervisors for the county? There is no formal relationship, Your Honor. In this matter, because we're going for a subdivision, there needs to be a water allotment to the project. The water allotment would have come from Tres Pinos. We had a conditional intent to serve letter from Tres Pinos Water District. Let me ask. The Board of Supervisors denied a permit for the subdivision projects going forward. Therefore, even if we were to make a ruling, your client still can't go forward unless there is approval from the Board of Supervisors. Isn't that correct? On the project, Your Honor, that is correct. There are two separate issues here that we have been litigating, and I appreciate the chance for that clarification. One issue is, has the Tres Pinos Water District treated our clients fairly and in a matter that accords with due process? This goes back for a period of about 20 years. And I want to put the subdivision on hold for a moment. May I ask when your clients acquired the property interest? Your Honor, they've had the property interest for many years. I don't know the exact year, but it is for a long time, Your Honor. As long as 1989? I believe so, Your Honor. But at the break, I will ask my – I'm going to reserve some time for rebuttal, and I will ask them that exact date, and I'll let you know, Your Honor. Am I correct in understanding that after the administrative process concluded adversely, your client did not petition for review or petition for mandamus, I think they call it in California, to the Superior Court? We do have a petition for mandamus against the Superior Court. I know you did it later. With respect solely to the – with respect solely to San Benito County, Your Honor. And so part of it still stands, and it's now res judicata? Your Honor, that case has been stayed pending resolution of this case. Was it a timely petition? It was a timely petition, Your Honor. And it was filed after the complaint was filed in the U.S. District Court? Both of them were filed on a similar time frame, Your Honor. And that case was timely filed. It has just not moved forward because the understanding was this would need to be resolved first. When you say filed at a similar time, before or after? Your Honor, I was not the one who filed that. It was within a week or two. I believe it was a week or two after. So why shouldn't we stay this pending the decision by the State Court? I mean, if you went in the State Court, doesn't that make this moot? Well, it would make this moot, Your Honor. Well, let me rephrase it, Your Honor. No, it wouldn't because what the panel or what the district has said is even though it's – it provided an intent to serve, a conditional intent to serve notice at Exhibit R, what they are going to do, they said at the hearing, they are not going to issue anything. But you haven't asked them, and they haven't denied it. So why is that issue ripe? Well, Your Honor, I think under a futility doctrine, they have said they're not going to. That's all that we need to do, Your Honor. I thought Williamson County said, we just leave this to the State to go through the whole process before we interfere. Williamson, again, was a takings case, Your Honor. And under a takings analysis, there was a double ripeness in Williamson. First, you had to get a final determination from the local agency. Secondly, you then had to avail yourself of the State entity's just compensation provisions. In this case, Your Honor, we're not dealing with a taking. Postlingual – Well, why does that distinguish it, though? I thought Williamson was broader than that and did not limit itself to takings. And the idea is if the local administrative process, whatever it is, works out adversely, you still can't get into district court until you give the State superior court and the State supreme court a chance to fix it. Your Honor, the cases have only – and I believe this might be in the Kinsley and Henney, I believe. They don't apply the second prong of Williamson to substantive due process cases. And there's an argument the first prong of Williamson does not apply either. In a takings case, you know, the taking is not what's illegal. It's the failure to pay just compensation. So it is a harm that comes down the road. In a substantive due process case, the harm is immediate. We have a right to due process immediately. And if you look at what's happened over the course of time, from the time they entered into the moratorium until the present, there's been a continual pattern of abuse against my clients. So the argument would be that the first prong of Williamson shouldn't apply either. I've not found any case law, though, that specifically addresses its skirts back and forth. Even if the first prong of Williamson was to apply, however, Your Honors, it would not matter because I believe it's met in this case. We went through the entirety of the Tres Pinos water district process. They issued a – What process was it, besides the fact that you applied originally, you got a tentative approval, you went through the planning commission, the planning commission also approved, and then you went before the Board of Supervisors, and at that point in time, Tres Pinos water district changed their position and opposed. Isn't that what happened? It is what happened, Your Honor. Then where is the – I mean, at that point in time, the water district is simply engaging in the administrative process as allowed for in front of the Board of Supervisors. So why is this a taking? Again, Your Honor, we're not claiming a taking. We're claiming a due process claim. What was the due process violation? Well, first of all, if you go back to 1989, the moratorium was imposed without a formal vote, without proper notice under the Brown Act, under Water Code Section 350 and Section 351 of the California Water Code, and it's a question that this Council to address. Under those code provisions, you can enact a moratorium under certain circumstances. However, they have not – they did not meet the requirements of Code 350 and 351. So that challenge was ripe potentially in 1989. You have a two-year statute of limitations. Correct, Your Honor. Okay. So that's gone. But, Your Honor, if you look at the timing, over the next 10 to 12 years, there are several attempts by different local – by different agencies to get the water district to move forward, and the allegations are that they just took zero steps whatsoever over time due to a desire to not have build-out in the Tres Pinos area. Tres Pinos is 10 to 15 miles south of the Hollister area. They wanted to keep it rural, and in fact, two of the board members live within 500 feet of my client's property and did not want to see this property get developed. And so over time, they intentionally suppressed the ability of the water district to provide services. Nonetheless, they did provide – But at this point in time, the water district can't provide those services under applicable law because their facilities are inadequate for it. Isn't that what the board of supervisors found?  And again, I need to take a quick step back. We're on a motion to dismiss, and so the allegations, the factual allegations have to be accepted as true. And the factual allegations in the complaint are quite detailed, and I would point the Court to – But we can take judicial notice of the documents that are attached to the pleadings, et cetera, and take judicial notice of governmental action, can't we? Of course you can, Your Honor. All right. So tell me what property interest you have. I mean, because we have case law that says this, that an inchoate interest in trying to obtain water is not a sufficient property interest to invoke the substantive due process clause. And, Your Honor, under Swanson v. Moran Municipal Water, which is one of the large California cases dealing with water issues, 56 Cal App III 512, and that's from 1976, the Court does recognize that an inchoate interest in future water does not necessarily give rise to a takings claim. Right. It said it wasn't a property interest under California law. Unless the – and this they talked about in Swanson – unless the moratorium that was issued to prevent the water service, to prevent you from treating a future customer like a past customer, was not imposed properly pursuant to Section 350. And with the terms they use, it was imposed arbitrarily and capriciously. And in that situation, that is the due process that it's not a complete – It's not a complete and utterized. Basically, you're arguing from 1989 and 1999 about the water moratorium. Those – the statutes have long since run on those. Your Honor, correct, but we were not harmed until recently, Your Honor. Yes, but – So it would not have been ripe as to our client because there would have been no ability for us to challenge. We did not have a project at that time, Your Honor. But we're talking about procedural due process in one of your claims. True? Correct, Your Honor. That's long gone. I mean, you're arguing about procedures that were adopted 10, 20 years ago. But we are also arguing, Your Honor, that, for example, in 2008, there were temporary water supply connections given to the Stonegate project. That's paragraph 23 of the complaint. There are other connections that were given to other projects. And then in 2016, in this project, they changed their minds and said, we will not help you, we will not serve you because of the moratorium. So we are being treated differently than other people who have applied for residential projects in the past. I do want to segregate out the subdivision process because the subdivision process where we are suing the county of Monterey, that is a stand-alone lawsuit for a subdivision flat map, subdivision map in general. We are talking in this lawsuit simply the right to get water. And we have been told that we will not give you the right to get water. And I think the basis of the complaint comes down to we will not give you the right to get water because we don't like your project, we don't want development here. And the people who voted on that are precluded from participating in that vote under California doctrine because they live within 500 feet of the project. They didn't vote on either of the moratoriums. That is correct, Your Honor. So the only thing they voted on is whether to appeal the Planning Commission's decision. True? Well, Your Honor, they didn't vote on the moratorium, but they've been on for a sufficient length of time where they have participated in keeping the district in a deficient state. I will answer one further question that Your Honors had asked us to address, and that was Noor Pennington. And we've been addressing it. Again, I believe that Noor Pennington, yes, it applies to governmental actors. It applies to governmental actors who are petitioning another governmental agency. I'm not saying that Noor Pennington would not apply. However, in this case, what we really are challenging is a whole course of action. If Noor Pennington were to block this lawsuit, any public agency engaged in a pattern of misconduct could go to another public agency, raise it once, and say, oh, hey, by the way, I've raised this issue, therefore, Noor Pennington applies. It's similar to a privilege. A document does not become privileged because it was sent to an attorney. An underlying unprivileged document does not be bootstrapped into privilege. In this case, conduct that would not be protected by Noor Pennington does not get bootstrapped into protected simply because at one point in time it was raised at one hearing. And, Your Honors, I only have about a minute and a half left. I'd like to reserve that for rebuttal. Thank you, Your Honors. Good morning. May it please the Court. My name is Christine Breen. I represent the appellee's respondents, Trace Pinos Water District, Robert Frazetta, and Edward Schmidt. Regardless of how the facts of this case are framed, the issue remains that this isn't ripe. And the reason why is because ultimately the appellant's damages, if any, were caused by the decision of the San Benito County Board of Supervisors. Can you step it back for a second? In other words, they applied to get hooked up to the water, and it was denied. How was it denied? It was denied in a letter or what? The process in San Benito County requires that when a development applicant applies to the county, they need to present some evidence that they have, in our case, water and resources available for the project. So when they submitted their application back in 2013, they came to the district and asked for what we call a will-serve letter. And the district at that time gave them a conditional will-serve letter that enumerated 12 different conditions that would have to be met. So the language was clear in that letter that it was not a guarantee. That was despite the fact that there was a moratorium. That's correct. And so that was one of the conditions, is conditioned upon the fact that circumstances will have changed. But they couldn't have changed that condition because the moratorium wasn't in their ability to change the moratorium or to take care of the problems that were raised by the moratorium. That's correct. So circumstances would have had to change between the time the development application was submitted and when it was ultimately presented to the planning commission. Was this moratorium imposed locally or statewide or what? It was local. It was just imposed by the district. And so when there's a denial of that type of an application, no matter who it's from, if there is a – well, actually, no, there wasn't a denial in this situation. There was a tentative approval subject to certain conditions. Is that correct? That's correct. Was there a way in which a person could challenge those conditions and make it an unconditional approval? Well, that wasn't the context. The conditional intent to serve allowed the project to go forward and be vetted by the building department of the county. Okay. And which would have been appealable to the board of supervisors in the end. Correct. Okay. And that's what happened here. So what was the basis of the objection that was sent in the letter that was sent to the planning commission? These aren't on the record because it's a motion to dismiss, so I'm just curious, why did the district object? Well, at the time that the project was presented to the planning commission, over two years had passed. So that letter, the conditional intent to serve letter, had actually expired. Right. But in addition to that, the district had received a compliance order from the Regional Water Quality Control Board, which basically said that there can't be any new hookups in the district until the district addresses certain problems and certain conditions are met. So maybe I'm just inferring this from the complaint, but, I mean, I thought that the district had sent a letter to the planning commission objecting to the project. Is that right? And that was, yes, but that was at the end of the entitlement process when the project was then presented to the planning commission. Right. And the basis of the objection was what you just said or something else? Correct. No, it was what I just said. So then the planning commission went ahead and approved it. They did. And then the board then took formal action to vote to appeal that decision. Is that true? Correct. Okay. And based on that appeal, the Board of Supervisors granted the appeal, which effectively denied the project, which presented the appellants in this case with the opportunity to seek mandamus review with the state court, which they haven't done. I thought they did seek mandamus review. They just had not done it before this case was filed. It's my understanding that they have entered into a tolling agreement with San Benito County. I am not aware of an action actually being filed with the court, but, frankly, I do not know. When you say a tolling agreement, you mean an agreement that they can file? Correct. So at the time of the Board of Supervisors' vote, the letter that your agency originally wrote had already expired. Correct. Would they have applied again at that point in time for another request for a hookup? They could have, but the staff, building and planning staff, had made the recommendation not to approve the project based on the subsequent letter. What would be the formal appeal from that decision? A formal? In other words, your agency has made a decision not to grant the hookup. What would be the formal appeal or the process that would normally be there for somebody in their position to challenge that decision? Well, that's a good question, Your Honor, because really there was no formal request. So this was ñ there has never ñ there was never a formal request for a water connection. Well, let's assume there had been and it had been denied. Is the remedy mandamus or is it some other remedy? Had they come to the district, assuming Norfax, and the connection had been denied, then I think arguably they would have standing because at that point they would have a ñ But I think the question is what remedy would they have. Would they have a state administrative remedy? Would they have a state judicial remedy to challenge the decision? Their remedy would have to be with the state, yes. Mandamus? Yes. There's not an appellate body that would govern the water district administratively? No. So their only recourse would be a state mandamus action in Superior Court? As an initial step, yes. And once they pursue mandamus then and pursue that process, at that point they could seek to, I guess, revisit these claims that they've brought for you. I thought it was just like administrative review but with different names of things. In the federal system and most state systems, you go through the administrative process, you lose, and then you go to Superior Court to get a correction to the administrative error. Isn't that what it amounts to or am I mistaken? Well, you're correct in the sense that their recourse would be to the state court. And once they exhausted that process and obtained a final determination, then at that point arguably they could come back. But there's no administrative avenue before then is, I think, what the judge is asking. Is there an administrative avenue before going to the state court? No, I don't believe there is in this particular governmental structure. You mentioned going back. That would be if they won in the Superior Court, right? Correct. Okay, now I understand. So is it futile for them to apply for a hookup now? I don't believe so, but they need to go through that process. No, no, I'm just saying it's futile. He's arguing we don't need to go through the process because you already decided that you're not going to grant it. Is that true? Well, no, because we aren't the ultimate decision maker as to this project. No, I understand that, but, I mean, you gave them a conditional permission, an intent to serve. Correct. And you could have just outright denied it, true? Correct. Yes, you didn't, and then it expired. So their argument as to that, not the project, is that it would be futile to go back and ask you for an additional intent to serve letter because you would deny it. Is that true? I really can't answer that for you. Circumstances have changed. The board makeup has changed. So at this point, I can't represent the court one way or another if that would be futile. What I can state, though, is if they pursued their mandamus action and went to the Superior Court, the local jurisdiction, as this court has consistently found, is the most appropriate one to deal with local land use decisions and craft remedies that are satisfactory to both sides so that it is possible that in doing that, the Superior Court could send the case back to the Board of Supervisors with parameters on how to resolve the issue. Because ultimately, it's the County Board of Supervisors, not the Water District, that's going to decide whether the project is approved or not. No, I understand that. I think he's separating the components of the project. In other words, if I understand his argument correctly, it's that the project is not going to go forward unless the Water District agrees to provide water and wastewater services. And you won't do that, and therefore the project is not going to go forward. That's his argument. And with the water moratorium in place, his project will never be developed. So that's the basis of his action against the district. And that has nothing to do with whether the Board of Supervisors takes final action or not. They could take final action for a whole number of different reasons. That's true, Your Honor. But that process, that state process, affords the appellants the opportunity to. . . The better answer would be is that even if your agency were to grant the hookup, it's worthless unless the Board of Supervisors approves the project. And it's not like a catch-22 because the Board of Supervisors, when it denied the project go-ahead, referenced the problems with the conditions of the well and other factors of your agency's, I guess, operations. They did. So the granting of a hookup is worthless until such time as they can get approval from the Board of Supervisors. And the Board of Supervisors, even though it relied not upon the moratorium per se, but relied upon the problems of the situation as they indicated in their decision. Isn't that correct? That's correct. I mean, ultimately, the decision lies with the Board of Supervisors. Right. Now, let's assume in the . . . Do you believe that the state court could order you in the present posture to give them a hookup? In other words, even if the project is approved, that doesn't necessarily mean they get the water, correct? I'll be honest with you. It presents a real dilemma for my client, given the current state of the infrastructure. I mean, it presents a dilemma, but, I mean, is it your position that the district could deny the hookup, even if the Superior Court approved the project? Well, I don't have a good answer for you, Your Honor, because that really does present a dilemma. On one hand, there's a compliance order in place from the state saying that you can't afford hookups. If the state court were to order the project to go forward and the Board of Supervisors said the project is approved, you have to allow hookups. Couldn't a mandamus petition result in an order that said hook them up? It could, and then that's where . . . And whether it's a problem for the water district or the county or not, they've got to hook them up. It could, and it would present my client with a dilemma at that point because there would be competing and contradictory orders from the state that we would have to resolve. I am prepared to address . . . Isn't there a way to resolve that by either complying with the court order or going to jail? Can you repeat that, Your Honor? Isn't the way you resolve a dilemma of that sort by either complying with the court order or going to jail? Well, yes, and I mean, I can represent to you that my client is attempting to comply, but it's not a quick fix. It's a municipal water district that was constructed in 1960. There's 100 customers, so in terms of upgrading facilities, it's not something that can happen overnight or even within a few months, so it's an ongoing process. So as to the Noor-Pennington issue, I gather that is restricted to the appeal . . . I'm sorry, to the appeal that the district took to the planning board decision. I think Noor-Pennington actually has been interpreted by this court much more broadly to include activities within the sphere of governmental activity or litigation so that the steps that my clients took in terms of testifying at the Board of Supervisors . . .  . . . or deciding to appeal. Testifying, writing a letter, appealing, but it would not apply to internal deliberations as to the district itself. As to what itself? In other words, it would not apply to any actions that the district took on its own. That would be a legislative privilege, perhaps, but Noor-Pennington is a petition privilege. Correct. So it would only be the actions of the district and the commissioners vis-à-vis other governmental agencies. So if Your Honor is referring to the moratorium process, I would agree that Noor-Pennington does not apply to the moratorium itself. All right. Thank you. All right. Any further questions? Thank you very much. Okay. Thank you, Your Honors. And I do want to apologize and address one quick issue. Counsel did refresh my recollection. I had prepared the complaint, the mandamus complaint, against the County of San Benito and a different attorney in our office. Instead of filing it, negotiated with the County of San Benito, enter into a tolling agreement that would allow us to file that lawsuit, so that that lawsuit has not yet been filed. They were prepared simultaneously, but it would still be timely under that tolling agreement. I agree with Your Honor's assessment about Noor-Pennington applying to the petitioning activity at the very end, but not applying to the balance of the determinations. I do want to make sure that I am very clear about one item. So if that's gone, what decision do you have that you're contesting for the water district? I mean, your complaint talks about you object to them sending the letter, you object to them testifying, you object to them appealing, but you don't have any other action that the district took formally against your clients. I understand you say it would be futile, but we still don't have a decision from the district that's adverse to you. But we do have a statement from the district saying that they will no longer give us a hookup. And they said that at the hearing, Your Honor. Now, I'm not using that to establish liability. I'm using that statement to establish a finality and a futility. And if you look at paragraph 55 of the complaint, and I see that my time is up, Your Honor, I can answer the question if you'd like. Go ahead and finish, and I think Judge Kleinfeld may have had a question. No, you covered it. Okay. We are pleading a much more broader and arbitrary discriminatory and wrongful pattern of attempted and actual deprivation of due process rights, not just the hearing, but the keeping of the intentional keeping of the water district in a substandard State so that they could with plausibility say, oh, we can't issue a connection here, but then when someone else comes along that they like, they do issue a connection. So it is that pattern throughout time of not addressing the water system, of not complying with the State Water Resource Control Board provisions, of not following through on their expert determinations. And we laid that out in detail in paragraphs 14 to 37 of the complaint. Yes, we read the complaint. So thank you very much.  Thank you both for your arguments. Thank you, Your Honor. This argument will be submitted for decision, and we'll proceed with oral argument on the next case on the calendar, which is Dawson v. NCAA.
judges: Kleinfeld, Thomas, Wu